IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CLIENTRON CORP.**<br><br>    v.<br><br>**JOHN BENNETT, et al.** | **CIVIL ACTION**<br><br>**NO. 14-1396** |

MEMORANDUM RE MOTION TO DISMISS COMPLAINT

Baylson, J.                                                                                                          June 12, 2014

## I.    Introduction

Clientron brings this diversity suit against John Bennett ("Bennett"), and Devon IT alleging (1) fraudulent misrepresentation and (2) breach of contract.  Bennett and Devon IT have filed a motion to dismiss for failure to state a claim.  For the following reasons, the Court concludes that Clientron's complaint states a claim upon which relief can be granted as to Devon IT only.

## II.   Facts

Clientron is a Taiwanese company that produces thin-client computers. ECF 1 ¶ 6. Devon IT is an information technology company that offers thin-client hardware and software. ECF 1 ¶ 10.  Devon IT's principal place of business is Pennsylvania. ECF 1 ¶ 3.  Since August 2008, Clientron has sold thin-client products to Devon IT. ECF 1 ¶ 11.  The parties entered into a Supply and Purchase Agreement in August 2008. ECF 1 ¶ 12.  The Supply and Purchase Agreement is governed and controlled by the law of Taiwan. ECF 1-1 § 13.2. Between October 28, 2010 and March 29, 2012, Devon IT placed numerous purchase orders with Clientron for custom made computer products. ECF 1 ¶¶ 23-24.

Around January 2012, Devon IT started delaying payments to Clientron. ECF 1 ¶ 17. On March 30, 2012, Bennett, the president of Devon IT, indicated to Clientron that Devon IT would pay overdue Clientron invoices, which were already a month late, by April 2, 2012. ECF 1 ¶ 32. On March 31, 2012, in reliance on Devon IT's statements that payments would be forthcoming, Clientron shipped over $126,000 of computer equipment to Dell on Devon IT's behalf. ECF 1 ¶ 43. On April 12, 2012, Bennet emailed Clientron, saying that Devon IT would pay the $5 million owed to Clientron after April 16, 2012. ECF 1 ¶ 34. On or about April 24, 2012, Bennett emailed Clientron again, saying that Devon IT would transfer payment to Clientron by "next week." ECF 1 ¶ 36. On May 3, 2013, Bennett told Clientron he was prepared to meet and resolve outstanding accounts receivable. ECF 1 ¶ 38. Devon IT has not paid for any of the overdue invoices and currently owes Clientron over $6 million in unpaid invoices. ECF 1 ¶ 21. Devon IT has also failed to pay for some of the P.O. Products placed with the purchase orders. ECF 1 ¶ 24. Devon IT ordered more than $14 million of custom-made P.O. products which cannot be resold. ECF 1 ¶ 24.

Clientron has sued Bennett and Devon IT on two counts. Count One is for fraudulent misrepresentation and seeks $20 million in damages. ECF 1 ¶48. Count Two is for breach of contract and seeks more than $14 million in damages. ECF 1 ¶ 53. Clientron alleges that the corporate veil should be pierced and Bennett should be liable for the acts of Devon IT under an alter-ego theory. ECF 1 ¶ 9.

Bennett and Devon IT have filed a motion to dismiss Clientron's fraud and breach of contract claims for failure to state a claim, including the alter ego theory for failure to state a claim against Bennett.

### III. Legal Standard

#### A. Jurisdiction

The Court has jurisdiction because (1) there is diversity of citizenship between Clientron, a Taiwanese company, and Devon IT, a company incorporated in Pennsylvania, and John Bennett, a Pennsylvania resident, and (2) the amount in controversy is in excess of $75,000. 28 U.S.C. § 1332.

#### B. Fraud

Although the breach of contract claim is governed by Taiwan law, the fraud claim is subject to U.S. choice of law principles. See Hammersmith v. TIG Ins. Co., 480 F.3d 220, 226 (3rd Cir. 2007) (applying choice of law rules of the forum state in a diversity case). Assuming that Pennsylvania law is controlling, which neither party disputes, an action for fraudulent misrepresentation includes five elements: (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result. Martin v. Lancaster Battery Co., Inc., 530 Pa. 11, 19 (1992).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all well-pleaded factual allegations and must construe them in the light most favorable to the non-moving party. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 228 (3d Cir.2008). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege circumstances with enough factual matter that plausibly leads to the conclusion that the plaintiff is entitled to relief. Id. at 234. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of the claims. Id. "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to reasonably infer that the defendant is liable for the misconduct alleged." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir.2009).

Because this is a fraud claim the complaint must also satisfy Rule 9(b), which requires that the complaint "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9. Regarding both federal and state fraud claims, the Third Circuit has held that Rule 9(b)'s particularity requirement means the plaintiff must plead: "(1) A specific false representation of material facts; (2) knowledge of its falsity by the person who made it; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage." Christidis v. First Pennsylvania Mortgage Trust, 717 F.2d 96, 99 (3d Cir. 1983) (citation omitted).

To satisfy Rule 9(b), a complaint must plead facts showing a specific false representation of material facts. Id. Under Pennsylvania law, a cause of action for fraud must allege misrepresentation of a past or present material fact, and cannot be based on a failure to perform an action in the future. Nissenbaum v. Farley, 380 Pa. 257, 264 (1955) ("promises to do something . . . do not in themselves constitute fraud, though they are not subsequently complied with"); Singh v. Wal-Mart Stores, Inc., CIV. A. 98-1613, 1999 WL 374184, at *9 (E.D. Pa. June 10, 1999) ("A claim for fraudulent misrepresentation may not be based on a promise to take action in the future."). However, a statement of present intention which is known to be false when uttered can give rise to a fraudulent misrepresentation claim. College Watercolor Group, Inc. v. William H. Newbauer, Inc., 468 Pa. 103, 115 (1976) ("Statements of intention . . . which do not, when made, represent one's true state of mind are misrepresentations known to be such and are fraudulent.").

4

To succeed on a fraudulent misrepresentation claim, the plaintiff must allege specific facts that lead to the inference of fraudulent intent. <u>HCB Contractors v. Rouse & Associates, Inc.</u>, Case No. 91-CV-5350, 1992 WL 176142, at *5 (E.D. Pa. July 13, 1992) (dismissing plaintiff's fraud count because it had only alleged "a bald allegation of dishonesty unaccompanied by any specific facts from which even an inference of fraud can be drawn"); <u>Phoenix Technologies, Inc. v. TRW, Inc.</u>, 834 F. Supp. 148, 152 (E.D. Pa. 1993) (allowing defendant leave to amend its counterclaim to allege facts that a representation was made which did not actually comport with true state of mind at that time); <u>Timberline Tractor & Marine, Inc. v. Xenotechnix, Inc.</u>, Case No. 98-cv-3629, 1999 WL 248644, at *3 (E.D. Pa. Apr. 27, 1999) (allowing plaintiff to amend its complaint to allege that the misrepresentation was known to be false at the moment it was made).[1]  Examples of factual allegations that the Third Circuit has suggested would be probative of fraudulent intent from the moment the promise was made include:

> utter recklessness and implausibility of the statement in light of subsequent acts and events, a showing that the promisor's intention to perform was dependent upon contingencies only known to him, or evidence showing at the time of the promise that the promisor could not or would not fulfill the promise.

<u>Luscko v. S. Container Corp.</u>, 408 F. App'x 631, 634-35 (3d Cir. 2010) (affirming district court's grant of summary judgment).

The court in <u>Phoenix Technologies</u> found that the proposed counterclaim stated a claim for fraudulent misrepresentation when it alleged that Phoenix promised to purchase TRW's Customer Service Division.  The court explained that even though the representation in question was about a future event, TRW could state a claim for fraud by alleging facts that Phoenix had

---

[1] According to the Third Circuit, actions for fraudulent misrepresentation and fraudulent inducement are parallel, with the difference being the remedy sought. <u>Mellon Bank Corp. v. First Union Real Estate Equity & Mortgage Investments</u>, 951 F.2d 1399, 1411 (3d Cir. 1991) (citing fraudulent misrepresentation and inducement cases interchangeably and explaining they are similar, with the only difference being in remedy.)

> not even met with representatives of Metropolitan Life when it stated to [TRW] that financing would be finalized in two to three days, that Metropolitan Life never represented to plaintiff that it would extend financing, and that Phoenix knew shortly after entering into the Agreement that financing could not be obtained . . . then plaintiff's statements constitute misrepresentations of existing fact.

Phoenix Technologies, 834 F. Supp. at 152 (granting defendant leave to amend counterclaim).

## IV. Discussion

### A. Fraud

Clientron's complaint seeking damages for fraudulent misrepresentation states a claim because it contains sufficient factual evidence notifying Devon IT of facts supporting the allegations that Devon IT did not intend to pay for goods they had contracted to receive, and did receive, and that Bennett, as the head of Devon IT, made fraudulent misrepresentations.

Here, Clientron's complaint pleads facts that plausibly lead to the conclusion that Devon IT never intended to fulfill its promises. Clientron's complaint does allege that the promise Devon IT made to pay the outstanding invoices was knowingly false. ECF 1 ¶¶39-41. Although conclusory statements of fact are insufficient to satisfy Rule 12(b)(6) or Rule 9(b). Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007), Clientron's complaint contains numerous factual allegations which the Court must accept as true, and construe in the light most favorable to plaintiff.

Clientron's complaint pleads a series of specific dates that Devon promised to pay for the invoices. Taken together, Clientron's continued shipment of merchandise, contrasted with Devon IT's repeated nonperformance on a series of promises to pay, which were made on March 30, April 12, April 24, and May 3, could be viewed as proof that Devon IT never intended to

pay. ECF 1 ¶¶ 32,34,36,38.  In this respect, Devon IT's actions echo Phoenix's promise that it would secure financing in a few days despite having not spoken to Metropolitan Life.[2]

Clientron has pled facts suggesting that Devon IT did not have assets or access to financing during this period, and Devon IT was undercapitalized. ECF 1 ¶9.  Clientron has alleged facts substantiating its ignorance of the falsity of Bennett's statements and justifiable belief that Devon IT would not mislead it.  ECF 1 ¶ 45.  In support of that assertion, Clientron alleges facts about the personal relationship between Robert Chin, Clientron's CEO with Bennett, Devon IT's founder.  ECF 1 ¶¶10,25. Clientron also points to their three year personal and business relationship.  ECF 1 ¶ 47.  Assuming the representation was false, Clientron adequately pled ignorance of the statement's falsity.

Clientron also alleges that Devon IT made the promises with the knowledge and intent that Clientron would deliver and manufacture P.O. Products because of the promise to pay. ECF 1 ¶ 44.  In support of this allegation, Clientron alleges that Devon IT promised to pay Clientron on March 30, 2012, and Clientron shipped products the next day in reliance on Devon IT's statement.  Viewing Devon IT's promise on March 30, 2012 in light of Clientron's shipment on March 31, 2012, the facts alleged support Clientron's claim that Devon IT's promise on March 30, 2012 was meant to induce Clientron to act on the promise.  Additionally, general allegations are sufficient to satisfy the scienter elements for fraudulent misrepresentation claims.  Fed. R. Civ. P. 9(b).

Here, Clientron has sufficiently pled it relied on Devon IT's representations.  Clientron alleges that, in reliance on Devon IT's representation, it "continued to manufacture . . . continued to deliver . . . and delayed pursing its late invoices." ECF 1 ¶ 43.  Clientron alleges that in

---

[2]  Under Illinois' law of promissory fraud, the Seventh Circuit holds that a series of broken promises "is better . . . evidence of fraud than a single unfulfilled promise." <u>Speakers of Sport, Inc. v. ProServ, Inc.</u>, 178 F.3d 862, 866 (7th Cir. 1999)

reliance on Devon IT's representation it made a shipment for $126,000 on March 31, 2012, based on Devon IT's promise on March 30, 2012. ECF 1 ¶ 43.

Clientron alleges that "as a proximate result" of Devon IT's representation, Clientron suffered harm in the amount of $20 million. ECF 1 ¶ 48. Clientron's allegations appear to be general claims for costs associated with Devon IT's breach of contract and are unrelated to the issue of fraudulent misrepresentation. Nonetheless, Clientron has specifically pled $126,000 of harm, based on the March 31, 2012 shipment. ECF 1 ¶ 43. This is sufficient because the specific details of Clientron's harm were pled. See Core Const. & Remediation, Inc. v. Village of Spring Valley, NY, Case No. 06-cv-1346, 2007 WL 2844870, at *5 (E.D. Pa. Sept. 27, 2007) (finding that plaintiff sufficiently pledged harm based on the complaint's "detailed explanation regarding the costs associated with" the fraud).

Clientron has also shown that its reliance on Devon IT's representation resulting in $126,000 of harm was justified because of the three year business relationship between Devon IT and Clientron, and the personal relationship Robert Chin, Clientron's CEO, had with Bennett, founder of Devon IT. ECF 1 ¶¶10,25,47

Paramount in this decision are the allegations that defendant Bennett, on behalf of defendant Devon IT, made repeated representations that Devon IT would pay Clientron for goods and merchandise delivered, but failed to do so. In reliance on these representations, Clientron kept shipping more merchandise. Although this may have been foolhardy business behavior on behalf of Clientron, and there are perhaps defenses which Devon IT can make to Clientron's claims, the allegations are sufficient.

Additional facts going into this decision is the allegation that Devon IT had received funds from Dell, inferentially, for goods which Devon IT purchased from Clientron and resold to

Dell, but did not use those funds received from Dell to pay Clientron's invoices.  ECF 1 ¶¶ 22, 43-44.

The dividing line between a complaint which does satisfy Rule 9(b) or does not, is not a bright line and depends on the circumstances.  The Court's decision is to some limited extent influenced by the Third Circuit's recent decision in *Foglia v. Renal Ventures Management, LLC*, ____ F.3d _____, Case No. 12-4050, 2014 WL 2535339 (3d Cir. June 6, 2014).  Although the facts of that case are entirely different, and concern the sufficiency of allegations to allege a claim brought under the False Claims Act, 31 U.S.C. § 3729, the holding of this recent case warrants the Court, in a common law fraud complaint, to make reasonable and common sense inferences favorable to plaintiff from the allegations.  As the Court says in the final paragraph of that opinion, the facts set forth a certain hypothesis which "certainly suffices to give Renal [defendant] notice of the charges against it, as is required by Rule 9(b)." *Id.* at *4.

### B.     Alter-Ego Theory

There is a strong presumption in Pennsylvania against disregarding the corporate form, Wedner v. Unemployment Compensation Bd. of Review, 296 A.2d 792, 794 (Pa. 1972).  The complaint does not adequately allege facts to support an alter-ego theory.  Under Pennsylvania law, the following factors are considered in determining whether to pierce the corporate veil: (1) undercapitalization; (2) failure to adhere to corporate formalities; (3) substantial intermingling of corporate and personal affairs; and (4) use of the corporate form to perpetrate a fraud.  Lumax Indus. V. Aultman, 669 A.2d 892, 895 (Pa. 1995).

The complaint alleges that Bennett is individually liable based on the nature of the claim, the specific representations made by Bennett personally, and that Devon IT is insufficiently capitalized, which could make Bennett personally liable for engaging in such large multi-million

dollar transactions knowing that his company would not be able to pay for the goods ordered and received.  Devon IT cites abundant Pennsylvania authority of the substantial burden of proving an alter-ego theory against an individual, but the current issue is only concerning the allegations, not the sufficiency of the evidence.

The Court concludes that the alter-ego allegations as to Bennett are too conclusory at this point.  However, the Court will allow Clientron to file an amended complaint and will order that a Rule 16 conference take place forthwith and discovery may also begin forthwith.  There are several factors not in the complaint from which Clientron may find sufficient facts to replead against Bennett without going into detailed discovery.

1. In Clientron's Memorandum in Opposition to Devon IT's Motion to Dismiss, Clientron asserts facts that bolster the plausibility of its claim.  Clientron states that despite a Settlement and Release agreement that stated Devon IT would pay Clientron once it received proceeds from <u>Devon IT, Inc. v. IBM Corp., et al.</u>, Devon IT siphoned $13.5 million into a shell entity called Devon AD Tech to prevent paying Clientron.  This allegation is not in the complaint.

2. A related case is also pending in this Court between Clientron and Devon IT, based on a Taiwanese arbitration proceeding, Civil Action No. 2013-5634.  An extensive arbitration proceeding was held in Taiwan.  Clientron may have sufficient facts from the testimony or documentary evidence in that proceeding from which to make sufficient alter-ego allegations as to Bennett.

If not, the Court will allow prompt discovery, which may produce facts relevant as to the alter-ego claim against Bennett, such as production of corporate and bank records, and taking

Bennett's deposition.  Some specifics are set forth in the Order and others will be developed at the Rule 16 conference.

The Court rejects Clientron's argument that Devon IT is violating the "gist of the action" rule which has been cited frequently in Pennsylvania contract jurisprudence.  That doctrine primarily relates to more than simple "failure to pay" allegations as in this case.  Clientron relies on this Court's decision in *DeFebo v. Anderson Windows*, 6454 F.Supp. 2d 285 (E.D. Pa. 2009), which was a construction dispute in which the plaintiff attempted to make allegations of fraud when there was basically a breach of construction contract as the essence of the relationship between the parties.  That is not the case here.

In addition, the Court concludes that Count II, breach of contract, is similarly sufficient to allow Clientron to proceed against Devon IT on this claim.

### V. Conclusion

Clientron has alleged facts to state a claim for fraudulent misrepresentation and breach of contract against Devon IT.  The Court will dismiss the claim against Bennett without prejudice, but enter an Order granting certain relief so that all relevant evidence is preserved and that Clientron can take prompt discovery to allow it to amend if it can make more detailed factual allegations on the alter-ego theory against Bennett individually.

An appropriate Order follows.

O:\CIVIL 14\14-1396 clientron v. bennett\14cv1396.061214.memo.mtd.docx