IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLIENTRON CORP.,<br><br>       Plaintiff,<br><br>vs.<br><br>JOHN BENNETT AND DEVON IT, INC.,<br><br>       Defendants.<br><br>AND RELATED CROSS-ACTIONS. | CASE NO.: 2:14-cv-01396-MMB |

## AMENDED COMPLAINT

Plaintiff and Counter-Defendant Clientron Corp. ("Clientron" or "Plaintiff"), by and through its undersigned counsel, files this Complaint against John Bennett ("Bennett") and Devon IT, Inc. ("Devon IT") (collectively "Defendants"), and alleges as follows:

1.    Plaintiff, Clientron, is a corporation organized under the laws of Taiwan, having its principal place of business at 3F, No.75, Sec.1, Sintai 5th Rd., Sijhih Dist., New Taipei City, Taiwan 221, ROC.

2.    On information and belief, Defendant Bennett is the President of Devon IT, Inc. and resides in Villanova, Pennsylvania.

3.    On information and belief, Defendant Devon IT, Inc. is a Pennsylvania corporation having its principal place of business at 1100 First Avenue, Suite 100, King of Prussia, PA 19406.

## JURISDICTION AND VENUE

4. Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because Plaintiff is a foreign company, Defendants are residents of this district, and because the amount in controversy exceeds $75,000, exclusive of interest, fees and costs.

5. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b) and (c) because it is the judicial district that a substantial part of the events or omissions giving rise to the claim occurred. Additionally, it is the judicial district in which all Defendants reside.

## FACTS

### Clientron

6. Plaintiff Clientron is a "thin client" manufacturer and distributor based in Taiwan. A "thin client" is a computer or a computer program which depends heavily on some other computer (its server) to fulfill its computational roles. Thin clients are components of a broader computer infrastructure. Clientron is the world's top independent thin client ODM manufacturer, with over 2.6 million units of thin client PC sold since 2006.

### John Bennett

7. Defendant Bennett is an individual residing in Delaware County, Pennsylvania.

8. Clientron is informed and believes, and based thereon alleges, that at all times mentioned in this complaint, Defendants, and each of them, acted individually for himself, herself, or itself, and as the agent, principal, partner, associate, joint venturer, employee, alter ego, and/or conspirator of the other Defendant; that the Defendants, and each of them, were at all times acting within the course, purpose and scope of said agency, partnership, association, joint venture, employment, alter ego and/or conspiracy, and that Defendants, and each of them, were acting with the authorization, permission, and or consent of the remaining Defendants.

9. Discovery has shown that John Bennett is the alter ego of Defendant Devon IT because the corporate form of Devon IT was a mere sham that is structured and operated with off-shore affiliates.

10. John Bennett and Nance DiRocco are the sole shareholders of Devon IT and jointly own the corporation through tenants by the entireties.

11. Nance DiRocco is the wife of John Bennett and is neither an employee, director or officer of the corporation. Ms. DiRocco is listed with Mr. Bennett on the business bank account has unfettered access to the main operating bank accounts of Devon IT. She is allowed to make withdrawals and transfers of money without prior approval/authorization by Devon IT and has done so in the past.

12. Devon IT failed to observe all necessary corporate formalities including keeping accurate corporate records and shareholder meeting minutes. There are no corporate records substantiating details for various transactions and no records of annual meetings or shareholder meetings.

13. John Bennett and Nance DiRocco siphoned funds from the corporation and used corporate assets for his personal benefits which were unauthorized. There was substantial intermingling of corporate and personal affairs.

14. John Bennett dissipated corporate assets received from the *Devon IT, Inc. v. IBM Corp. et. al,* Case No. 2:10-cv-02899-JHS (E.D. Pa.) for his own personal benefits.

15. John Bennett dissipated corporate assets received from Dell, Inc. for the payment of thin client products for his own personal benefits.

16. Devon IT and its associated entities are grossly undercapitalized. Devon IT has no assets and operated at a considerable financial loss.

17. Devon IT is merely a façade of the operation of the sole shareholders, John Bennett and Nance DiRocco. Discovery has shown that John Bennett utilized the corporate form to perpetrate a fraud.

18. Based on the facts set forth herein, at all relevant times hereto, John Bennett was the alter ego of Devon IT.

19. It is necessary to pierce the corporate veil of Devon IT to prevent John Bennett from using the corporate form to avoid personal obligations.

20. It would be inequitable to allow John Bennett to use corporate facades to shield him from individual liability.

**Devon IT**

21. Devon IT is an information technology (IT) company that offers thin client hardware and software. Devon IT is part of the Devon International Group and Devon AD Tech, Inc., of which Bennett is the founder.

**The Parties' Business Relationship**

22. Since August of 2008, Clientron has sold thin client products to Devon IT.

23. On or about August 15, 2008, the Parties entered into a Supply and Purchase Agreement (the "Agreement"). See Exhibit A.

24. The initial business volume between Clientron and Devon IT was small, around 6,000 units per year, at approximately $100-220 USD per unit.

25. In or around November 2010, Devon IT won a contract with Dell Inc. ("Dell"), wherein Devon IT purchased products from Clientron which Clientron would drop-ship directly to Dell.

26. Clientron made their first drop shipment to Dell in or around April 2011.

27. Because of Devon IT's contract with Dell, business volume between Clientron and Devon IT increased exponentially; between April 2011 and April 2012, Clientron sold over 100,000 units of products to Devon IT.

28. In or around January 2012, Devon IT started delaying payments to Clientron.

29. On March 30, 2012, Devon IT promised Clientron that they would pay the overdue Clientron invoices, which were already a month late, by April 2, 2012. On April 2, 2012, Dell publicly announced its merger with Wyse Technology, another thin client manufacturer.

30. Defendant Bennett represented to Clientron on April 12, 2012 by email that Defendants would pay Clientron $5 million after April 16, 2012.

31. Defendant Bennett represented to Clientron on April 25, 2012 by email that Defendants would transfer payment to Clientron "next week" (April 30, 2012 to May 4, 2012).

32. Devon IT never made any payments to Clientron since March 2012. Devon IT currently owes Clientron over $6 million USD in unpaid invoices for products Clientron provided to Devon IT.

33. On information and belief, Devon IT has received at least $10 million from Dell for Clientron shipments.

34. Between October 28, 2010 and March 29, 2012, Defendants placed numerous non-cancellable purchase orders ("Purchase Orders") with Clientron. See Exhibit B attached. Each Purchase Order was made under the Agreement and constituted an enforceable contract between Plaintiff and Defendants as the products in the Purchase Order ("P.O. Products") were custom-made.

35. Defendants did not pay for all the P.O. Products that they placed with their Purchase Orders. These P.O. Products were custom-made for Defendants and cannot be resold to other customers. The amount of Purchase Orders Defendants placed without purchasing totals (minus partial payments remitted) $14,352,977.29 USD. *See* Exhibit B attached.

36. The majority of the misrepresentations by Devon IT were made by Bennett personally to Robert Chin, Chief Executive Officer of Clientron. Bennett represented himself to Mr. Chin and others at Clientron as Mr. Chin's friend, and Mr. Chin and Clientron placed personal trust in John Bennett's representations because of the personal friendship between the companies' leaders and John Bennett's status as a medical doctor.

37. Upon information and belief, Devon IT and Bennett fraudulently transferred Devon IT's assets in order to avoid paying Clientron's invoices and anticipated judgment to Clientron.

## COUNT ONE

### FRAUD (Plaintiff v. Bennett and Devon IT)

38. Clientron repeats and incorporates by reference the allegations in paragraphs 1-37 as if fully set forth herein. Based on the properly alleged alter ego theory in Paragraph 9, supra, Defendant Bennett is responsible for the acts of Devon IT. Further Bennett had authority to speak for Devon IT as he was the President.

39. Defendant Bennett intentionally made material misrepresentations of fact and promises that he and Devon IT had no intent to perform.

40. Defendant Bennett is personally liable for all of the above mentioned misrepresentations as he was an agent, representative and President of Devon IT and made the

false statements with respect to both his own intentions and those of Devon IT. Francis Lutz is the Chief Financial Officer of Devon IT and had authority to speak on behalf of Devon IT.

41. Clientron is informed and believes, and based thereon alleges, that Defendant Bennett falsely represented to Clientron that Defendants will pay its late invoices and will purchase all the Purchase Orders it placed.

**Defendant Bennett's Misrepresentations Regarding Payment**

42. On or about March 30, 2012, Francis Lutz, acting under the direction and as an agent for Defendant Bennett promised Clientron in email that he would pay the overdue Clientron invoices, which were already a month late, by April 2, 2012.

43. Clientron did not receive any payment from Devon IT on April 2, 2012.

44. On or about April 12, 2012, Defendant Bennett misrepresented to Clientron through email that Defendants would pay Clientron $5 million after April 16, 2012.

45. Clientron did not receive any payment from Defendant Bennett or anyone at Devon IT after April 16, 2012.

46. On or about April 24, 2012, Defendant Bennett again misrepresented to Clientron through email that Defendants would transfer payment to Clientron "next week" (April 30, 2012 to May 4, 2012).

47. Clientron did not receive any payment from Defendant Bennett or anyone at Devon IT in the week of April 30, 2012.

48. On or about May 3, 2013, Defendant Bennett misrepresented to Clientron that Defendants were prepared to meet and resolve the outstanding accounts receivable.

49. Unbeknownst to Clientron, all of the above statements were in fact false. Defendant Bennett knew that the misrepresentations were false when he made and/or authorized them as he never had the intention to complete payment for the Purchase Orders.

50. Despite repeated promises, Devon IT made no payments whatsoever to Clientron since March 2012 on account of the invoices submitted to it.

51. Clientron is informed and believes, and based thereon alleges, that Defendant Bennett in fact did not intend to pay the late invoices to Clientron when he promised to pay the late invoices.

52. Clientron is informed and believes, and based thereon alleges, that when Defendants placed their Purchase Orders, they in fact knew they would not pay for the Purchase Orders that they placed.

53. In reasonable reliance on Defendant Bennett's representations and concealment of material facts, Clientron continued to manufacture P.O. Products that Defendants placed, continued to deliver P.O. Products to Dell, and delayed pursuing its late invoices from Devon IT. For example, Clientron shipped 840 units of P.O. Products totaling over $126,000 on March 31, 2012 based on Defendants' March 30, 2012 promise that they would make payment on April 2, 2012. But for Devon IT's false promise to pay, Clientron would not have fulfilled any more of Devon IT's P.O. Purchase Orders or continued to manufacture P.O. Products Devon IT placed.

54. Clientron is informed and believes, and based thereon alleges, that at the time Defendant Bennett made false representations to Clientron, he knew that his misrepresentations were false and deliberately concealed the true intention and knowledge in order to induce Clientron to continue to deliver P.O. Products to Dell and to continue to manufacture P.O.

Products for Devon IT. Defendant Bennett made his misrepresentations recklessly and without regard for its truth and intended for Clientron to rely on his misrepresentation.

55. At the time of the misrepresentation and concealment of Defendants described hereinabove, Clientron was ignorant of Defendants' true intention.

56. Defendant Bennett's misrepresentations were important and material to Clientron because had Clientron known Defendants' true intention, it would not have continued delivery of the P.O. Products to Dell or continued to manufacture P.O. Products Devon IT placed.

57. Clientron justifiably relied upon Defendant Bennett's misrepresentations and concealment of the true facts. Based on over three years of business relationship between Clientron and Devon IT and Devon IT's contract with Dell, Clientron reasonably believed that Defendants would honor the Purchase Orders that it placed and would pay for the Products purchased from Clientron.

58. Clientron's reliance on Defendant's misrepresentations and concealment of material facts was a substantial factor in causing Clientron's harm. As a proximate result of Defendant's misrepresentations and concealment of material facts as described above, Clientron has been damaged in the amount of $20 million or in an amount to be proven at trial, and in any event exceeding the court's minimum jurisdictional threshold.

59. In engaging in the conduct described hereinabove, Defendants, and each of them, acted with oppression, fraud and malice, warranting the imposition of punitive damages against Defendants.

## COUNT TWO

### BREACH OF CONTRACT (Plaintiff v. Bennett and Devon IT)

60. Clientron repeats and incorporates by reference the allegations in paragraphs 1-59 as if fully set forth herein.

61. Based on the properly alleged alter ego theory in Paragraph 9, Defendant Bennett is responsible for the acts of Devon IT.

62. By placing Purchase Orders for P.O. Products with Clientron, Defendants entered into enforceable contracts under the Agreement with Clientron. *See* Exhibit B attached.

63. Clientron is informed and believes, and based thereon alleges that all conditions required for Defendants' performance, if any, had occurred.

64. Defendants breached its contractual obligations in the Purchase Orders with Clientron by failing to pay Clientron. The P.O. Products were custom-made for Defendants and not resalable to other customers. The amount for these Purchase Orders that Defendants failed to purchase totals $14,352,977.29 USD (minus partial payments from Devon IT). *See* Exhibit B attached.

65. As a direct and foreseeable proximate result of Defendants' breach of contract, Clientron has suffered damages in excess of this Court's jurisdictional threshold, in an amount according to proof, exclusive of pre-judgment interest and its attorneys' fees and costs.

## COUNT THREE

### BREACH OF AGREEMENT (Plaintiff v. Bennett and Devon IT)

66. Clientron repeats and incorporates by reference the allegations in paragraphs 1-65 as if fully set forth herein.

67.     Based on the properly alleged alter ego theory in Paragraph 9, Defendant Bennett is responsible for the acts of Devon IT.

68.     On or about August 15, 2008, Plaintiff and Defendant Devon IT entered into a Supply and Purchase Agreement (the "Agreement") wherein Clientron agreed to manufacture and sell products to Devon IT.

69.     Devon IT breached its obligations under the Agreement when it failed to pay for invoices of the thin-client products under the Agreement.

70.     As a direct and foreseeable proximate result of Defendants' breach of contract, Clientron has suffered damages in the amount of $6,574,546.17 plus attorneys' fees and costs and legal interest.

71.     This count is expressly asserted only to the degree the Court determines in the related Case No. 13:cv-05634, that it cannot enforce Clientron's Taiwan arbitration judgment.

## PRAYER FOR RELIEF

**WHEREFORE** the Plaintiff prays for judgment as follows:

A.      On Count One: For damages against all Defendants in the sum of $20 million or such greater sum, according to proof;

B.      On Count Two: For damages against all Defendants in the sum of $14,352,977.29, or in an amount to be proven at trial, plus punitive damages;

C.      On Count Three: For damages against Defendants in the sum of $6,574,546.17, plus attorneys' fees and costs and legal interest.

D.      For prejudgment interest under Pennsylvania law;

E.      For post-judgment interest under the law;

F.      For Plaintiff's attorneys' fees as allowed by statute or contract;

G.      For costs of suit; and

H.    For such other relief as the Court shall deem proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Clientron hereby requests a trial by jury for each and every claim for relief in the Complaint that is triable by jury.

Respectfully submitted,

DATED: September 18, 2014

/s/ Larry M. Keller
Larry M. Keller (28511)
lmk@sidkoffpincusgreen.com
SIDKOFF, PINCUS & GREEN, P.C.
1101 Market Street, Suite 2700
Philadelphia, PA 19107
Tel: 215-574-0600

DATED: September 18, 2014

/s/ John D. van Loben Sels
John D. van Loben Sels (Admitted *Pro Hac Vice*)
jvanlobensels@fishiplaw.com
FISH & TSANG, LLP
303 Twin Dolphin Drive, 6th Floor
Redwood City, CA 94065
Tel: 650-209-1667

## CERTIFICATE OF SERVICE

The foregoing was served upon counsel for Defendant via electronic filing on the date listed below.

Respectfully submitted,

DATED: September 18, 2014

   /s/ John D. van Loben Sels
John D. van Loben Sels (Admitted *Pro Hac Vice*)
jvanlobensels@fishiplaw.com
FISH & TSANG, LLP
303 Twin Dolphin Drive, 6th Floor
Redwood City, CA 94065
Tel: 650-209-1667

Attorneys for Plaintiff CLIENTRON CORP.